## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) |
| **ATNA RESOURCES INC.**, *et al.* | ) **Case No. 15-22848 - JGR** |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| **ATNA LIQUIDATING TRUST,** | ) **Jointly Administered Under** |
| **KENNETH J. BUECHLER,** | ) **Case No. 15-22848 0-JGR** |
| **LIQUIDATING TRUSTEE,** | ) **Chapter 11** |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Adv. No. 17-01557-JGR** |
| | ) |
| **WELLS FARGO EQUIPMENT** | ) |
| **FINANCE, INC.** | ) |
| | ) |
| Defendant. | ) |

## DISCLOSURE OF DEFENDANT'S EXPERT REPORT PURSUANT TO FED.R.BANKR.P. 7026

COMES NOW, Wells Fargo Equipment Finance, Inc., ("Wells Fargo") by and through its attorneys, **BROWN DUNNING WALKER PC**, and respectfully discloses its Supplemental Expert Report, from Stephanie Drew, CPA, MST, CFE, Partner, Rubin Brown, pursuant to Fed. R. Bankr. P. 7026.

1.  Stephanie Drew's Report, Background and Qualifications and statement of compensation to be paid, is attached hereto as Exhibit "A". Respectfully submitted,

Dated this 15st day of October, 2018.

BROWN DUNNING WALKER PC

*s/ Neal K. Dunning*
Douglas W. Brown, Reg. No. 10429
Neal K. Dunning, Reg. No. 10181
2000 S. Colorado Boulevard
Tower Two, Suite 700
Denver, Colorado 80222
303-329-3363
dbrown@bdwfirm.com
ndunning@bdwfirm.com
*Attorneys for Wells Fargo Equipment Finance, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 15, 2018, I served by prepaid first class mail or other acceptable means, a copy of the **SUPPLEMENTAL DISCLOSURE OF DEFENDANT WELLS FARGO EQUIPMENT FINANCE'S EXPERT REPORT PURSUANT TO FED.R.BANKR.P. 7026,** on all parties entitled to service pursuant to FED.R. BANKR.P. and local bankruptcy rules at the following addresses:

**Via CM/ECF:**

Michael Guyerson

By: */s/ Jennifer L. Mellott*
For Brown Dunning Walker PC



# Rebuttal Report

RE: ATNA LIQUIDATING TRUST

V.

WELLS FARGO EQUIPMENT FINANCING, INC.

OCTOBER 15, 2018



# TABLE OF CONTENTS

THE KLEEMAN REPORTS ............................................................................................ 2

REBUTTAL OPINIONS ................................................................................................. 3

REBUTTAL ANALYSIS ................................................................................................ 4

    RECALCULATION OF AUGUST REPORT ANALYSIS ............................................ 4

        *Pro-Forma Accounting* ............................................................................... 5

            Cash Receipts ........................................................................................ 5

            Cash Disbursements ............................................................................. 6

        *Corrected Pro-Forma Statements* ............................................................. 7

        *Accounts Payable and the Ability to Pay Debts as They Become Due* ....... 7

        *Atna/Pinson October 2015 Payment* ...................................................... 8

    REASONABLENESS OF THE RESULT UNDER THE KLEEMAN ANALYSIS ............ 8

TRANSFERS ............................................................................................................ 11

    THE PRO-FORMA METHOD ....................................................................... 11

        *CR Briggs Analysis* .................................................................................. 11

        *Atna/Pinson Analysis* .............................................................................. 12

    CANYON ACCOUNT ................................................................................... 12

INFORMATION CONSIDERED ................................................................................... 12

QUALIFICATIONS, COMPENSATION AND PRIOR TESTIMONY ....................... 13


EXHIBIT A — CURRICULUM VITAE, SPEECHES,  AND PRIOR TESTIMONY

EXHIBIT B — CR BRIGGS CORRECTED PRO-FORMA ACCOUNT

EXHIBIT C — ATNA/PINSON CORRECTED PRO-FORMA ACCOUNT

EXHIBIT D — CANYON ACCOUNT ANALYSIS FOR CR BRIGGS

EXHIBIT E — CANYON ACCOUNT ANALYSIS FOR ATNA PINSON



RubinBrown LLP
*Certified Public Accountants*
*& Business Consultants*

1900 16th Street
Suite 300
Denver, CO 80264

T 303.698.1883
F 303.777.4458

W rubinbrown.com
E info@rubinbrown.com

October 15, 2018

Douglas W. Brown, Esq.
Brown Dunning Walker PC
2000 South Colorado Blvd.
Tower Two, Suite 700
Denver, Colorado 80222

**Re:  Atna Liquidating Trust v. Wells Fargo Equipment Financing, Inc.**

Dear Mr. Brown:

This report has been prepared in accordance with the terms of our engagement as accounting experts as it relates to bankruptcy matters in the above referenced matter and should not be used for any other purpose. The information in this report is based on information provided to us, which has not been examined or reviewed by us in accordance with attestation standards promulgated by the American Institute of Certified Public Accountants.

You have previously asked us to analyze and respond to the May 9, 2018 Expert Report (the "May Report") issued by Robert E. Kleeman, Jr., CPA/ABV, ASA of OnPointe Financial Valuation Group, LLC., and his July 12, 2018 Supplement (the "July Report") in the above referenced matter.

Our analysis and response was included in our July 31, 2018 report.

Mr. Kleeman has issued a second Supplement Report dated August 30, 2018 ("August Report") in the above referenced matter. The August Report significantly changes both the methodology and resulting opinions. However, the August Report states that the report should be read in conjunction with the original May Report and July Report[1], (collectively the "Kleeman Reports").

As a result, you have asked us to analyze and respond to the August Report. This report includes our revised rebuttal analysis and opinions based on the new methodology used in the August Report and replaces our prior July 31, 2018 report.

---

[1] August Report, page 2.



# The Kleeman Reports

The Kleeman Reports determine solvency for CR Briggs Corporation ("CR Briggs") and Atna Resources Inc. ("Atna/Pinson") (collectively "the Companies") during the two-year period prior to the bankruptcy filing ("Transfer Period"). The Kleeman Reports also calculate recoverable amounts from creditors of CR Briggs and Atna/Pinson, during the Transfer Period, specifically, Wells Fargo Equipment Finance Inc. ("Wells Fargo").

Because the Companies participated in the cash management system of their parent, Canyon Resources Corporation ("Canyon"), all of the cash receipts for both CR Briggs and Atna/Pinson were deposited into the Canyon Bank Account ending 8583 ("Canyon Account"). Cash was then transferred to various other entities including CR Briggs and Atna/Pinson, from the Canyon Account to pay their creditors, including Wells Fargo.

The May Report states:

> The Trustee has alleged that payments to Wells Fargo by Briggs and Atna used funds owned by other entities who were not obligated to or indebted to Wells Fargo, and that certain funds were improperly and fraudulently transferred to Wells Fargo.[2]

Fraudulent Transfers are discussed in the Bankruptcy Code under Section 548, which allows the Trustee to avoid transfers if, property was transferred for less than reasonably equivalent value in the 2 years before the Bankruptcy petition. In addition to assessing reasonably equivalent value, the Bankruptcy code requires one of four tests to be met.[3]

In this matter, the Kleeman Reports use the "Cash Flow Test" to determine if the debtor was unable to pay its debts as they came due.

The methodology used in the Kleeman Reports ("Kleeman Analysis") is one which first compares the cash receipts from the Canyon Account to the cash disbursements from bank accounts held in the name of CR Briggs and Atna/Pinson ("Pro-Forma Account"), on a stand-alone basis, during the Transfer Period. Adjustments are then made to the Pro-Forma Account on a monthly basis using Accounts Payable for both CR Briggs and Atna Pinson as of December 31, 2014, and November 18, 2015, the date of the bankruptcy filing.

---

[2] May Report, page 3.

[3] 11.U.S.C. §548.

The definition of cash flow used for the Cash Flow Test in the August report is as follows:[4]

> Cash Receipts
> Less:   Cash Disbursements
> +/-     Net Change in Accounts Payable

The August Report concludes that:

- ☑ CR Briggs was always insolvent from December 2014 to the filing of the petition on November 18, 2015.

- ☑ Atna/Pinson was always insolvent from November 2013 through the filing of the petition on November 18, 2015, with the exception of November 2014 and January 2015, where it met the cash-flow test for solvency.

The August Report opines that:

- ☑ The recoverable amount from Wells Fargo related to payments made on behalf of CR Briggs and Atna/Pinson are $167,005 and $48,040, respectively.

- ☑ $5,602 of the October 2015 payment to Wells Fargo from Atna/Pinson is recoverable for payments due after the filing date of the petition.

## Rebuttal Opinions

In my opinion, the Kleeman Reports contain multiple deficiencies summarized as follows:

- ☑ The Pro-Forma Account for CR Briggs used for the Kleeman Analysis is not accurate, specifically, two deposits from Aurament Trading for a total of $1,579,902 are not included in the CR Briggs accounting on Exhibit G of the August Report. This inaccuracy serves to understate the Pro-Forma Account of CR Briggs.

- ☑ The accounts payable amount for both CR Briggs and Atna/Pinson used in the August Report are not consistent with the Bankruptcy filing schedules. This impacts the analysis of CR Briggs and Atna/Pinson ability to pay their debts as they became due and overstates the recoverable amounts calculated in the August Report.

- ☑ The August Report uses the result of the Cash Flow Test to determine Net Recoverable amounts. The cash flow methodology used in the Kleeman Reports includes changes in accounts payable which are not actual transfers of

---

[4] August Report, page 9.

cash.  As a result, the % Shortfall and calculated Net Recoverable amounts are overstated.

☑   The methodology used in the Kleeman Reports does not address the Trustee's allegation that payments made to Wells Fargo were property of other entities, who were not obligated to or indebted to Wells Fargo.

In my opinion, the basis for which is discussed in the following pages of this report:

☑   On a stand-alone basis, CR Briggs borrowed $1,486,700 through the Canyon cash management system, which was needed to maintain a positive ending balance during the Transfer Period.  The funds were fully repaid through the Canyon cash management system by September 2015, prior to the bankruptcy filing.

☑   During the Transfer Period, CR Briggs providing a net surplus of $606,450 which was used as part of the Canyon cash management system.

☑   On a stand-alone basis, Atna/Pinson borrowed $2,445,264 through the Canyon cash management system, which was needed to maintain a positive ending balance during the Transfer Period.  The funds were fully repaid through the Canyon cash management system by July 2015, prior to the bankruptcy filing.

☑   During the Transfer Period, Atna/Pinson providing a net surplus of $729,837 which was used as part of the Canyon cash management system.

☑   The October payment of $8,403.88 paid off the equipment lease from Wells Fargo rather than a prepayment calculated by Mr. Kleeman.

## Rebuttal Analysis

For this rebuttal report, we reviewed the Kleeman Reports.  In addition, we reviewed pleadings in this matter and also reviewed documents produced in this matter including, but not limited to, bank statements for Canyon, CR Briggs and Atna/Pinson.  Financial information, including annual reports and financial statements filed with the SEC by Atna Resources Ltd., the parent company of Canyon, CR Briggs and Atna/Pinson was also reviewed.

### RECALCULATION OF AUGUST REPORT ANALYSIS

The August Report includes the Pro-Forma Account as Exhibit G which provides stand-alone cash accounting for both CR Briggs and Atna/Pinson for the Transfer Period. The bank statements of Canyon, CR Briggs and Atna/Pinson are the foundation of the analysis.

In addition, the August Report uses Accounts Payable as of December 31, 2014 based on financial statements for both CR Briggs and Atna/Pinson.  Accounts Payable

amounts included in the Bankruptcy schedules as of November 18, 2015 are also used in the August Report.

To determine the recoverable amount, the cash disbursement from the Pro-Forma Accounts and "Accrued AP Changes" are added together and compared to the cash receipts from the Pro-Forma Accounts for both CR Briggs and Atna/Pinson.

As part of our work, we prepared an electronic recalculation of the August Report Schedules. Through this recalculation we identified multiple deficiencies within the analysis discussed below.

## Pro-Forma Accounting

Because of the Canyon cash management system, stand-alone cash accounting for both CR Briggs and Atna/Pinson is created as part of the Kleeman Analysis. Specifically, the Canyon cash management system took in all of the deposits through the Canyon Account. These deposits included the subsidiary revenue, proceeds from the sale of assets, and debt funding. The cash held in the Canyon account was subsequently transferred to subsidiary bank accounts including accounts held in the name of CR Briggs and Atna/Pinson.

### Cash Receipts

As part of our work we created a database of all cash deposits into the Canyon Account during the Transfer Period. The deposits were then categorized and summarized on a monthly basis. These cash deposits were then compared to the August Report Pro-Forma Account schedules. The comparison identified two deposits totaling $1,579,901 from Aurament Trading which were not included in the CR Briggs Pro-Forma Account used in the August Report.

The following is a monthly summary of all of the cash deposits into the Canyon account during the Transfer Period.

**Figure 1 – Canyon Account Deposits**

| Month | CR Briggs (Auramet Trading) | Atna/Pinson (Newmont Mining) | Other Deposits | Total Deposits |
|---|---|---|---|---|
| | | Canyon Account Deposits November 19, 2013 - November 18, 2015 | | |
| Nov-13 | $1,632,133 | $0 | $2,625 | $1,634,757 |
| Dec-13 | $3,550,149 | $0 | $203,305 | $3,753,454 |
| Jan-14 | $2,979,425 | $0 | $4,801,525 | $7,780,950 |
| Feb-14 | $2,844,010 | $0 | $1,696 | $2,845,706 |
| Mar-14 | $3,910,148 | $0 | $396,687 | $4,306,835 |
| Apr-14 | $2,734,325 | $0 | $397,261 | $3,131,586 |
| May-14 | $3,642,675 | $0 | $9,772 | $3,652,447 |
| Jun-14 | $4,294,993 | $0 | $63,145 | $4,358,137 |
| Jul-14 | $3,090,330 | $95,346 | $300,719 | $3,486,395 |
| Aug-14 | $2,635,117 | $292,189 | $1,720,237 | $4,647,543 |
| Sep-14 | $3,621,770 | $386,741 | $34,281 | $4,042,793 |
| Oct-14 | $2,198,547 | $282,659 | $88,229 | $2,569,434 |
| Nov-14 | $2,412,477 | $532,014 | $5,017,048 | $7,961,539 |
| Dec-14 | $4,072,010 | $685,426 | $27,060 | $4,784,496 |
| Jan-15 | $1,977,814 | $1,097,033 | $264,234 | $3,339,080 |
| Feb-15 | $2,659,648 | $578,783 | $443,539 | $3,681,969 |
| Mar-15 | $2,717,655 | $429,587 | $318,999 | $3,466,240 |
| Apr-15 | $1,546,120 | $1,582,874 | $24,366 | $3,153,360 |
| May-15 | $2,297,850 | $995,829 | $34,169 | $3,327,849 |
| Jun-15 | $2,733,293 | $1,171,432 | $56,514 | $3,961,239 |
| Jul-15 | $2,265,805 | $1,433,457 | $518,654 | $4,217,916 |
| Aug-15 | $1,872,588 | $1,390,191 | $16,159 | $3,278,937 |
| Sep-15 | $2,036,387 | $1,516,411 | $297,876 | $3,850,673 |
| Oct-15 | $984,281 | $754,088 | $90,580 | $1,828,949 |
| Nov-15 | $718,904 | $259,899 | $72,860 | $1,051,663 |
| Total Deposits | $65,428,450 | $13,483,959 | $15,201,538 | $94,113,947 |
| | *70%* | *14%* | *16%* | *100%* |

The two deposits from Aurament Trading were identified on the December 2013 and September 2014 Canyon Account bank statement for $702,849 and $877,052 respectively.

## Cash Disbursements

Cash disbursements included in the Pro-Forma Accounts comes from the bank accounts of CR Briggs and Atna/Pinson. As part of our work we summarized the activity in the CR Briggs and Atna/Pinson accounts and compared the amounts to the Kleeman Pro-Forma Account schedules. We identified that the August Report Pro-Forma Accounts included disbursements from the CR Briggs account made after the filing date.

### Corrected Pro-Forma Statements

Using the cash deposit database and the activity from the CR Briggs and Atna/Pinson accounts we have created Corrected Pro-Forma Account statements. These statements are summarized in total as follows with the monthly amounts included in Exhibit B and C of this report.[5]

**Figure 2 – Corrected Pro-Forma Net Cash Flows**

| Corrected Pro-Forma Net Cash Flows | | |
|---|---|---|
| | CR Briggs | Atna/Pinson |
| Cash On Hand 11/19/2013 | $257,896 | |
| Cash Receipts | $65,428,450 | $13,483,976 |
| Cash Disbursements | ($65,381,856) | ($12,758,708) |
| Other Misc Adj | $354,447 | $4,570 |
| Cash On Hand 11/18/2015 | ($52,486) | |
| Net Cash Surplus Retained by Canyon | $606,450 | $729,838 |

As shown in the figure above, using the Pro-Forma Account analysis both CR Briggs and Atna/Pinson cash receipts exceeded cash disbursements to vendors during the Transfer Period.

### Accounts Payable and the Ability to Pay Debts as They Become Due

As discussed in the August Report, the Cash-Flow Test uses cash flow which includes the "+/- Net Change in Accounts Payable". This change in Accounts Payable is used in part to substantiate an inability to pay debts as they become due. Specifically, the Kleeman Report draws a parallel between deferring payments and an increase in accounts payable.[6]

Stand-alone financial statements were not available for either CR Briggs or Atna/Pinson on a monthly basis. Mr. Kleeman was able to identify accounts payable for both CR Briggs and Atna /Pinson as of December 31, 2014 and the "Accounts Payable" included in the bankruptcy filings as of November 18, 2015.

However, the amounts used in the August Report from the bankruptcy filings as of November 18, 2015 are incorrect and significantly overstated.

For CR Briggs, the August Report uses $11,308,639 of "Total claims from Part 2" on page 28 of "Schedule E/F: Creditors who have Unsecured Claims" which includes all of the creditors with "Nonpriority Unsecured Claims." We reviewed the list of creditors and only $1,075,853 of these claims result from "Accounts Payable". As a result, the August Report significantly overstates the accounts payable by including

---

[5] The CR Briggs Account and Atna/Pinson Account include additional cash deposits, these cash deposits are included in Figure 2 and on Exhibit B and C as "Other Misc Adj".

[6] August Report, page 9.

items such as intercompany balances, equipment leases, purchase agreements and service agreements.

For Atna/Pinson, it is not clear what claims were included in the August Report. However, the creditors with unsecured claims which resulted from "Accounts Payable" are only $651,533 compared to the $7,869,042 used in the August Report.

The following is a comparison of the Accounts Payable from December 31, 2014 and the Accounts Payable used in the August Report compared to the Accounts Payable listed on the November 18, 2015 Bankruptcy schedules.

### Figure 3 – Change in Accounts Payable

| Change in Accounts Payable | | | | |
|---|---|---|---|---|
| | CR Briggs | | Atna/Pinson | |
| | August Report | Actual | August Report | Actual |
| December 31, 2014 | $3,603,453 | $3,603,453 | $870,750 | $870,750 |
| Chapter 11 Filing (November 18, 2015) | $11,308,639 | $1,075,853 | $7,869,042 | $651,533 |
| Change in AP | $7,705,186 | ($2,527,600) | $6,998,292 | ($219,217) |

As shown in the figure above, the Accounts Payable amounts declined between December 31, 2014 and November 18, 2015 for both CR Briggs and Atna/Pinson.

Further, according to the notes to the interim consolidated financial statements issued for September 30, 2015, it was not until November 2015 when Atna Resources Ltd. on a consolidated basis failed to meet certain financial obligations and liabilities, which was due to operational issues starting in the fourth quarter 2015 at the Pinson Underground mine.[7]

### Atna/Pinson October 2015 Payment

In October 2015, Atna/Pinson issued a check to Wells Fargo for $8,403.88. This amount was the total payoff for Contract 0020366779400 effective 10/31/2015.

### REASONABLENESS OF THE RESULT UNDER THE KLEEMAN ANALYSIS

The Kleeman Report does not explicitly disclose the total recoverable amount from the Companies. Instead, the analysis uses a percentage, % Shortfall, which is applied to the Wells Fargo payments during the Transfer Period. When this same % Shortfall is

---

[7] Atna Resources Ltd. Interim Condensed Consolidated Financial Statement Third Quarter ended September 30, 2015, Notes to the Interim Consolidated Financial Statements, Note 1, Page 8.

applied to the "Total Cash Needs" used in the August Report, the result is the total recoverable amount from all of the creditors of CR Briggs and Anta/Pinson.

As shown in the following figure, the recoverable amounts are about $9.7 million for both CR Briggs and Atna/Pinson, respectively

### Figure 4 – Kleeman Recoverable Amount Compared to Net Cash Surplus

| Kleeman Recoverable Amount Compared to Net Cash Surplus | | |
|---|---|---|
| | CR Briggs | Atna/Pinson |
| Total Recoverable Amount (Calculated) | ($9,721,711) | ($9,739,115) |
| Net Cash Surplus (Figure 2) | $606,450 | $729,838 |

As discussed earlier, the methodology used in the August Report to determine the recoverable amount is based on the difference between the monthly cash receipts and both the cash disbursements and the calculated change in Accounts Payable. This method serves to overstate the recoverable amount by including non-cash transactions through changes in Accounts Payable. In addition, the methodology ignores subsequent repayment of transfers through the Canyon cash management system.

For example, as shown in Exhibit C, in August 2015, Atna/Pinson had a beginning Pro-Forma Account balance of $26,679. The revenues for the period were $1,390,191 and the disbursements were $1,079,305. As a result, Atna/Pinson had enough cash to pay make its own distributions and provide a surplus of cash through the Canyon cash management system. However, under the Kleeman Analysis, a recoverable amount from all creditors is $589,041 (29.76% of $1,979,305) is calculated.

The $9.7 million recoverable amount from both CR Briggs and Atna/Pinson stands in contrast to the actual cash activity. As discussed previously and included in Figure 2, both CR Briggs and Atna/Pinson generated a surplus of cash during the Transfer Period which was retained through the Canyon cash management system.

The magnitude of the overstatement which results for both can be visualized by comparing the cumulative net monthly transfers from the Canyon Account to the cumulative Recoverable Amount calculated under the Kleeman methodology.

### Figure 5 – Kleeman Recoverable Amount vs Cash Activity for CR Briggs



Under the Kleeman Analysis, the recoverable amount of $9,721,711 for CR Briggs between December 2014 and November 2015 is compared to the net cash receipts and cash disbursements for the Transfer Period, the result of which is a cash surplus of $606,450 of surplus retained in the Canyon cash management system.

### Figure 6 – Kleeman Recoverable Amount vs Cash Activity for Atna/Pinson



Under the Kleeman Analysis, the recoverable amount of $9,739,115 for Atna/Pinson between November 2013 and November 2015 is compared to the net cash receipts and cash disbursements for the same time period, the result of which is a cash surplus of $729,836 of surplus retained in the Canyon cash management system.

# Transfers

As discussed earlier, the Trustee claims that payments made to Wells Fargo were made from funds owned by entities other than CR Briggs and Atna/Pinson. However, the methodology used in the Kleeman Report does not identify or quantify these amounts.

There are two ways to account for these transfers, through the Pro-Forma Account or the Canyon Account.

The Pro-Forma method is described in the earlier versions of the Kleeman report, as "[t]he methodology used by us is very similar to the methodology that would be used to document individual checking account transactions." [8]

We can also look to the activity in the Canyon Account, which includes the transfers at issue in this matter and the corresponding revenue deposits from CR Briggs and Atna/ Pinson.

### THE PRO-FORMA METHOD

As discussed previously, Pro-Forma Accounts have been created using the cash receipts from the Canyon Account and the cash disbursements from both the CR Briggs and Atna/Pinson accounts. As shown in Figure 2 and Exhibits B and C of this report, the corrected Pro-Forma Accounts result in a positive cash balance at the end of the Transfer Period for both CR Briggs and Atna/Pinson. However, in some months, the ending balance drops below zero. In these months, both CR Briggs and Atna/Pinson required transfers through the canyon cash management system to maintain positive cash balances, these transfers were subsequently repaid through the Canyon cash management system.

### CR Briggs Analysis

As shown in Exhibit B of this report, under the Pro-Forma methodology, CR Briggs, at times, required transfers through the Canyon cash management system to maintain a positive balance during the Transfer Period. Specifically, $1,486,700 was required to maintain a positive ending balance. However, these transfers were subsequently repaid through the Canyon cash management system, and at the end of the Transfer Period, the CR Briggs Pro-Forma Account had a positive cash balance of $658.937, of which $606,450 was retained in the Canyon Account. [9]

---

[8] May Report, page 10.

[9] The difference between the $658,937 and $606,450 results from an ending balance of $52,486 in the CR Briggs Account.

Atna/Pinson Analysis

As shown in Exhibit C of this report, under the Pro-Forma methodology, Atna/Pinson required transfers through the Canyon cash management system to maintain a positive balance during the Transfer Period of $2,449,833. However, these transfers were subsequently repaid through the Canyon cash management system, and at the end of the Transfer Period, the CR Briggs Pro-Forma Account had a positive cash balance of $725,268 which was retained in the Canyon Account.

## CANYON ACCOUNT

The alternate method is to use the bank statements for the Canyon Account. The monthly amounts from the Canyon Account are included in Exhibit D and E of this report. These Exhibits account for the transfers out to both CR Briggs and Atna/Pinson and compare these transfers to the revenues deposited into the Canyon Account from CR Briggs and Atna/Pinson during the Transfer Period. As summarized below, the total revenue deposits for both CR Briggs and Atna/Pinson exceeded the transfers to their respective bank accounts as follows:

### Figure 7 – Canyon Account Deposits and Transfers

| Canyon Account Deposits and Transfers | | |
|---|---|---|
| | CR Briggs | Atna/Pinson |
| Transfers Out | ($64,822,000) | ($12,754,122) |
| Revenue Deposits | $65,428,450 | $13,483,959 |
| Net Cash Surplus | $606,450 | $729,837 |

Both the Pro-Forma method in Figure 2 and the Canyon Account analysis above yield the same result that both CR Briggs and Atna/Pinson provided a net cash surplus during the Transfer Period.

## Information Considered

Information considered, in addition to the sources cited elsewhere in this report and the Kleeman Reports, is summarized as follows:

- ☑ Pleadings including the amended complaint and answer

- ☑ Organization structure documents

- ☑ Bank account statements and related documents for Canyon, CR Briggs and Ata/Pinson

- ☑ Consolidated financial statements for various periods including 2013, 2014 and 2015

- ☑ Select financial statements for CR Briggs and Atna/Pinson

- ☑ Wells Fargo accounting schedules and payment details for leases with CR Briggs and Anta/Pinson
- ☑ Bankruptcy schedules for CR Briggs and Atna/Pinson

## Qualifications, Compensation and Prior Testimony

Attached as Exhibit A to this report is a copy of my curriculum vite, which includes my background, experience and a list of speeches and publications from the preceding ten years. Also attached is a listing of cases in which I have testified as an expert at trial or at deposition within the preceding four years.

All billings are based on actual time spent at normal hourly rates ranging from $100 to $475 per hour (Ms. Drew's billing rate is $325 per hour). The fee charged by us was not based upon any of our findings. Neither **RubinBrown**, nor any of its employees or clients, are associated with any of the parties to this litigation.

This report is based on information available to date and is subject to change as new information becomes available. As additional information becomes available, we may supplement this report and our opinions. The fee charged by us was not based upon any of our findings

Sincerely,

Stephanie J. Drew, CPA, MST, CFE
Partner
**RubinBrown**

Attachments

EXHIBIT A

# CURRICULUM VITAE

### STEPHANIE J. DREW, CPA, MST, CFE

**EXPERIENCE SUMMARY**

Ms. Drew has over twenty years of varied experience in accounting, taxation and consulting, including eighteen years in public accounting. She has recently concentrated her efforts on assisting counsel representing both plaintiffs and defendants in a variety of legal disputes. Her consulting experience includes the calculation of economic damages, forensic accounting, and bankruptcy. Her background also includes computer forensics, including data mining and database models.

**LITIGATION CONSULTING HIGHLIGHTS**

<u>Primary Areas of Concentration:</u> Stephanie's primary areas of concentration are economic damages and forensic accounting investigations. She has consulted in a variety of matters, including the following:

- ☑ Retained as an expert for the investigation of a $147 million investment Ponzi scheme. This engagement included the development of a computerized database used to determine the timing of the Ponzi scheme.

- ☑ Retained as an expert to determine if loan default provisions were violated and to quantify the amount of fund used which did not comply with the loan default provisions.

- ☑ Assisted in the development of a computerized forecasting model to assess the impact of various operating scenarios on the company's ability to fund settlement payments in a product liability case.

- ☑ Calculated multiple lost profit models in multiple industries including health care, real estate development, and distribution

- ☑ Assisted in the investigation of a $38 million real estate Ponzi scheme. The engagement included development of a computerized database for tracing transactions between various entities and individuals and analysis of the company's solvency.

- ☑ Assisted a public company with investigation and "mapping" of alleged violations of the Foreign Corrupt Practices Act by the Company's South American subsidiary.

**INDUSTRY EXPERIENCE**

Stephanie has experience in a variety of industries including retail, healthcare, manufacturing, construction, real estate, energy and financial and legal services.

**EDUCATION, CREDENTIALS & PROFESSIONAL AFFILIATIONS**

Bachelor of Science in Business Administration with emphasis in Accounting and Information Systems from the University of Colorado at Denver

Masters of Science in Taxation from the University of Colorado at Denver

Certified Public Accountant: Colorado
Certified Fraud Examiner

American Institute of Certified Public Accountants (AICPA)
Colorado Society of Certified Public Accountants (CSCPA)
Association of Certified Fraud Examiners (ACFE)
American Bankruptcy Institute (ABI)
Association of Insolvency and Restructuring Advisors (AIRA)
International Women's Insolvency & Restructuring Confederation (IWIRC)

## Stephanie J. Drew CPA, CFE

### Federal and Colorado Rules of Civil Procedure, Rule 26(a)(2)(B)

### List of Cases Testified in (Deposition or Trial) Within the Preceding 4 Years

| Case Name | Year(s) | Jurisdiction | Plaintiff/ Claimant Attorney; Law Firm | Defendant/ Respondent Attorney; Law Firm | Client | DEP | TRL |
|---|---|---|---|---|---|---|---|
| Infrastructure Projects of America, LLC, et al. v. South Beebe Draw Metropolitan District, et al. | 2017 | District Court, County of Denver, State of Colorado, Civil Action No 2016CV30966 | Melissa Ogburn and Serena L. Hendon, Nixon Shefrin Hensen Ogburn, P.C. | Douglas W. Brown and David C. Walker, Brown Dunning Walker PC | Defendant | No | Yes |
| Impact Opportunities Fund L.P. et al, v. Titlecard Capital 1Fund, L.P. et al. | 2016 | District Court, County of Denver, State of Colorado, Civil Action No 2016CV33926 | Thomas J. Krysa, Brownstein Hyatt Farber Schreck, LLP, et al. | R. Livingston Keithley, Overton Law Firm | Receiver | No | Yes |
| In the Matter of Arbitration between: The International Brotherhood of Police Officers, Local 537 and the City of Pueblo | 2016 | Interest Arbitration | John L. Rice, The Law Firm of John L. Rice | Todd A. Fredrickson, Fisher & Phillips, LLC | Plaintiff | No | Yes |
| In the Matter of Arbitration between: The International Brotherhood of Police Officers, Local 537 and the City of Pueblo | 2015 | Interest Arbitration | John L. Rice, The Law Firm of John L. Rice | Todd A. Fredrickson, Fisher & Phillips, LLC | Plaintiff | No | Yes |
| Gerold Rome, Securities Commissioner for the State of Colorado, v. Sean Michael Mueller et al. | 2015 | District Court, County of Denver, State of Colorado, Civil Action No 2010CV3280 | John C. Smiley, Lindquist & Vennum, LLP | David M. Miller, Berenbaum Weinshienk, PC, et al. | Receiver | No | Yes |
| In the Matter of Arbitration between: The International Brotherhood of Police Officers, Local 537 and the City of Pueblo | 2014 | Interest Arbitration | John L. Rice, The Law Firm of John L. Rice | Todd A. Fredrickson, Fisher & Phillips, LLC | Plaintiff | No | Yes |
| C. Randel Lewis, Receiver v. Jefferies & Company, Inc. | 2014 | FINRA Dispute Resolution Arbitration, No 12-1388 | John C. Smiley, Lindquist & Vennum, LLP | Peter J. Macdonald, Wilmer Hale, LLP | Plaintiff | No | Yes |
| Encana Oil & Gas (USA) Inc. v. Mathew Daugherty et al | 2014 | American Arbitration Association, Case No. 50-523-T-000753-10 | Mary Stuart, Husch Blackwell, LLP | Sander N. Karp, Karp Neu and Hanlon PC | Claimant | No | Yes |

| Stephanie J. Drew, CPA, CFE<br>List of Speeches (Including Courses Taught) in the Past 10 Years | | |
|---|---|---|
| **Course Sponsor** | **Year(s)** | **Speech Title or Subject** |
| International Women's Insolvency and Restructuring Confederation and Rubin Brown | 2018 | Accounting for Bankruptcy Attorneys Seminar Series (Part 1) |
| Rubin Brown | 2014 | Not-For-Profit Update:<br>Fraud Detection and Prevention |
| International Women's Insolvency and Restructuring Confederation | 2011 | Uncovering and Eradicating Fraud |
| Fairfield & Woods, P.C. | 2009 | Identifying and Preventing Fraud in the Workplace |
| IMA University (The IMA Financial Group, Inc.) | 2008 | Identifying and Preventing Fraud in the Workplace |

| Stephanie J. Drew, CPA, CFE<br>List of Publications in the Past 10 Years | | |
|---|---|---|
| **Publication (Publisher)** | **Issue(s)** | **Article Title** |
| None | | |

# EXHIBIT B

## Exhibit B
## CR Briggs Corrected Pro-Forma Account

| Month | Beginning Balance | Cash Receipts | Cash Disbursements | Other Misc Adj | Canyon Transfers | Revenue Repayments | Ending Balance |
|---|---|---|---|---|---|---|---|
| Nov-13 | $257,896 | $1,632,133 | ($783,129) | | | | $1,106,900 |
| Dec-13 | $1,106,900 | $3,550,149 | ($2,864,465) | | | | $1,792,584 |
| Jan-14 | $1,792,584 | $2,979,425 | ($3,153,224) | $2,822 | | | $1,621,607 |
| Feb-14 | $1,621,607 | $2,844,010 | ($4,969,547) | | $503,931 | | $0 |
| Mar-14 | $0 | $3,910,148 | ($2,868,185) | $4,636 | | ($503,931) | $542,668 |
| Apr-14 | $542,668 | $2,734,325 | ($2,993,590) | $46,317 | | | $329,720 |
| May-14 | $329,720 | $3,642,675 | ($2,994,639) | | | | $977,755 |
| Jun-14 | $977,755 | $4,294,993 | ($3,255,198) | $390 | | | $2,017,940 |
| Jul-14 | $2,017,940 | $3,090,330 | ($2,902,943) | $7,233 | | | $2,212,559 |
| Aug-14 | $2,212,559 | $2,635,117 | ($3,124,262) | $3,293 | | | $1,726,707 |
| Sep-14 | $1,726,707 | $3,621,770 | ($3,380,523) | $7,885 | | | $1,975,838 |
| Oct-14 | $1,975,838 | $2,198,547 | ($1,989,442) | | | | $2,184,944 |
| Nov-14 | $2,184,944 | $2,412,477 | ($2,375,837) | | | | $2,221,584 |
| Dec-14 | $2,221,584 | $4,072,010 | ($6,088,535) | | | | $205,059 |
| Jan-15 | $205,059 | $1,977,814 | ($2,647,616) | $22,381 | $442,362 | | ($0) |
| Feb-15 | ($0) | $2,659,648 | ($2,637,486) | | | ($22,161) | $0 |
| Mar-15 | $0 | $2,717,655 | ($2,185,752) | $1,483 | | ($420,201) | $113,185 |
| Apr-15 | $113,185 | $1,546,120 | ($1,927,549) | $9,000 | $259,244 | | ($0) |
| May-15 | ($0) | $2,297,850 | ($2,017,584) | $0 | | ($259,244) | $21,022 |
| Jun-15 | $21,022 | $2,733,293 | ($2,190,036) | $10,583 | | | $574,862 |
| Jul-15 | $574,862 | $2,265,805 | ($3,122,802) | $973 | $281,163 | | ($0) |
| Aug-15 | ($0) | $1,872,588 | ($1,709,065) | $2,556 | | ($166,079) | ($0) |
| Sep-15 | ($0) | $2,036,387 | ($1,509,277) | $1,123 | | ($115,084) | $413,148 |
| Oct-15 | $413,148 | $984,281 | ($1,249,542) | $53,773 | | | $201,660 |
| Nov-15 | $201,660 | $718,904 | ($441,627) | $180,000 | | | $658,936 |
| **Total** | | $65,428,450 | ($65,381,856) | $354,447 | $1,486,700 | ($1,486,700) | |

CR Briggs Account Balance at 11/18/2015    ($52,486)

Net Cash Surplus Retained by Canyon    $606,450

EXHIBIT C

Exhibit C
Atna/Pinson Corrected Pro-Forma Account

| Month | Beginning Balance | Cash Receipts | Cash Disbursements | Other Misc Adj | Transfers | Repayments | Ending Balance |
|---|---|---|---|---|---|---|---|
| Nov-13 | $0 | $0 | ($250,262) | $45 | $250,217 | | ($0) |
| Dec-13 | ($0) | $0 | ($205,390) | | $205,390 | | ($0) |
| Jan-14 | ($0) | $0 | ($187,947) | | $187,947 | | ($0) |
| Feb-14 | ($0) | $0 | ($520,845) | | $520,845 | | ($0) |
| Mar-14 | ($0) | $0 | ($165,521) | | $165,521 | | ($0) |
| Apr-14 | ($0) | $0 | ($144,930) | | $144,930 | | ($0) |
| May-14 | ($0) | $0 | ($97,290) | $4,525 | $92,765 | | ($0) |
| Jun-14 | ($0) | $0 | ($120,802) | | $120,802 | | ($0) |
| Jul-14 | ($0) | $95,363 | ($142,459) | | $47,096 | | ($0) |
| Aug-14 | ($0) | $292,189 | ($180,256) | | | ($111,933) | ($0) |
| Sep-14 | ($0) | $386,741 | ($406,814) | | $20,073 | | ($0) |
| Oct-14 | ($0) | $282,659 | ($301,043) | | $18,384 | | ($0) |
| Nov-14 | ($0) | $532,014 | ($159,953) | | | ($372,061) | ($0) |
| Dec-14 | ($0) | $685,426 | ($892,718) | | $207,292 | | ($0) |
| Jan-15 | ($0) | $1,097,033 | ($200,614) | | | ($896,419) | ($0) |
| Feb-15 | ($0) | $578,783 | ($926,422) | | $347,639 | | ($0) |
| Mar-15 | ($0) | $429,587 | ($545,949) | | $116,362 | | ($0) |
| Apr-15 | ($0) | $1,582,874 | ($1,399,781) | | | ($183,093) | ($0) |
| May-15 | ($0) | $995,829 | ($838,238) | | | ($157,591) | ($0) |
| Jun-15 | ($0) | $1,171,432 | ($769,281) | | | ($402,151) | ($0) |
| Jul-15 | ($0) | $1,433,457 | ($1,084,762) | | | ($322,016) | $26,679 |
| Aug-15 | $26,679 | $1,390,191 | ($1,079,305) | | | | $337,565 |
| Sep-15 | $337,565 | $1,516,411 | ($1,535,058) | | | | $318,918 |
| Oct-15 | $318,918 | $754,088 | ($427,615) | | | | $645,391 |
| Nov-15 | $645,391 | $259,899 | ($175,453) | | | | $729,838 |
| Total | | $13,483,976 | ($12,758,708) | $4,570 | $2,445,263 | ($2,445,264) | |

Page 1 of 1

# EXHIBIT D

## Exhibit D
## Canyon Account Analysis for CR Briggs

| Month | Canyon Transfers Out to CR Briggs | CR Briggs Revenue Deposits to Canyon | Total | Cumulative Total |
|---|---|---|---|---|
| Nov-13 | ($975,000) | $1,632,133 | $657,133 | $657,133 |
| Dec-13 | ($2,700,000) | $3,550,149 | $850,149 | $1,507,282 |
| Jan-14 | ($5,775,000) | $2,979,425 | ($2,795,575) | ($1,288,294) |
| Feb-14 | ($2,750,000) | $2,844,010 | $94,010 | ($1,194,284) |
| Mar-14 | ($2,475,000) | $3,910,148 | $1,435,148 | $240,864 |
| Apr-14 | ($2,775,000) | $2,734,325 | ($40,675) | $200,189 |
| May-14 | ($3,575,000) | $3,642,675 | $67,675 | $267,864 |
| Jun-14 | ($2,615,000) | $4,294,993 | $1,679,993 | $1,947,857 |
| Jul-14 | ($2,930,000) | $3,090,330 | $160,330 | $2,108,187 |
| Aug-14 | ($4,065,000) | $2,635,117 | ($1,429,883) | $678,304 |
| Sep-14 | ($2,430,000) | $3,621,770 | $1,191,770 | $1,870,074 |
| Oct-14 | ($2,175,000) | $2,198,547 | $23,547 | $1,893,621 |
| Nov-14 | ($5,015,000) | $2,412,477 | ($2,602,523) | ($708,902) |
| Dec-14 | ($3,375,000) | $4,072,010 | $697,010 | ($11,892) |
| Jan-15 | ($2,865,000) | $1,977,814 | ($887,187) | ($899,078) |
| Feb-15 | ($2,450,000) | $2,659,648 | $209,648 | ($689,431) |
| Mar-15 | ($1,955,000) | $2,717,655 | $762,655 | $73,224 |
| Apr-15 | ($2,230,000) | $1,546,120 | ($683,880) | ($610,656) |
| May-15 | ($1,995,000) | $2,297,850 | $302,850 | ($307,806) |
| Jun-15 | ($2,175,000) | $2,733,293 | $558,293 | $250,486 |
| Jul-15 | ($2,930,000) | $2,265,805 | ($664,195) | ($413,709) |
| Aug-15 | ($1,735,000) | $1,872,588 | $137,588 | ($276,121) |
| Sep-15 | ($1,440,000) | $2,036,387 | $596,387 | $320,265 |
| Oct-15 | ($1,151,000) | $984,281 | ($166,720) | $153,546 |
| Nov-15 | ($266,000) | $718,904 | $452,904 | $606,450 |
| **Total** | **($64,822,000)** | **$65,428,450** | **$606,450** | |

# EXHIBIT E

# Exhibit E
## Canyon Account Analysis for Atna/Pinson

| Month | Canyon Transfers Out to Atna/Pinson | Atna/Pinson Revenue Deposits to Canyon | Total | Cumulative Total |
|---|---|---|---|---|
| Nov-13 | ($250,217) | $0 | ($250,217) | ($250,217) |
| Dec-13 | ($205,390) | $0 | ($205,390) | ($455,607) |
| Jan-14 | ($187,947) | $0 | ($187,947) | ($643,554) |
| Feb-14 | ($520,845) | $0 | ($520,845) | ($1,164,400) |
| Mar-14 | ($165,521) | $0 | ($165,521) | ($1,329,921) |
| Apr-14 | ($144,930) | $0 | ($144,930) | ($1,474,851) |
| May-14 | ($92,765) | $0 | ($92,765) | ($1,567,616) |
| Jun-14 | ($120,802) | $0 | ($120,802) | ($1,688,418) |
| Jul-14 | ($142,442) | $95,346 | ($47,096) | ($1,735,514) |
| Aug-14 | ($180,256) | $292,189 | $111,933 | ($1,623,581) |
| Sep-14 | ($406,814) | $386,741 | ($20,073) | ($1,643,654) |
| Oct-14 | ($301,043) | $282,659 | ($18,384) | ($1,662,038) |
| Nov-14 | ($159,953) | $532,014 | $372,061 | ($1,289,977) |
| Dec-14 | ($892,718) | $685,426 | ($207,292) | ($1,497,269) |
| Jan-15 | ($200,614) | $1,097,033 | $896,419 | ($600,850) |
| Feb-15 | ($926,422) | $578,783 | ($347,639) | ($948,489) |
| Mar-15 | ($545,949) | $429,587 | ($116,363) | ($1,064,852) |
| Apr-15 | ($1,399,781) | $1,582,874 | $183,093 | ($881,758) |
| May-15 | ($838,238) | $995,829 | $157,591 | ($724,167) |
| Jun-15 | ($769,281) | $1,171,432 | $402,151 | ($322,016) |
| Jul-15 | ($1,084,762) | $1,433,457 | $348,695 | $26,679 |
| Aug-15 | ($1,079,305) | $1,390,191 | $310,887 | $337,565 |
| Sep-15 | ($1,535,058) | $1,516,411 | ($18,648) | $318,918 |
| Oct-15 | ($427,615) | $754,088 | $326,473 | $645,391 |
| Nov-15 | ($175,453) | $259,899 | $84,446 | $729,837 |
| **Total** | **($12,754,122)** | **$13,483,959** | **$729,837** | |